# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

---

IN RE:      JAMES W. AND BRENDA L. KINNEE,      Case No. 06-21356

                                 Debtors.       Chapter 7

---

## ORDER ALLOWING THE TRUSTEE TO WITHDRAW EMERGENCY MOTION TO EXTEND TIME TO FILE A STATEMENT OF CURRENT MONTHLY INCOME AND MEANS TEST CALCULATIONS FORM 22A AND SHORTEN TIME FOR HEARING

---

This decision involves the question of whether § 707(b) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") requires a debtor whose debts are primarily business debts to file Form B22A, commonly known as the means-test form. The Court concludes that it does not; § 707(b) of the new amendments, like the former § 707(b), allows dismissal of a Chapter 7 proceeding for abuse[1] only if the proceeding was "filed by an individual debtor . . . whose debts are *primarily consumer debts*." (Emphasis added.)

Factual Background

On March 31, 2006, James and Brenda Kinnee ("the debtors") filed a petition for Chapter 7 relief. The caption of the petition indicates that debtor James Kinnee also did business as Superior Stainless & Erecting and Custom Machine

---

[1] The Court notes that the recently-enacted BAPCPA amendments allow courts to dismiss Chapter 7 proceedings for "abuse" of the bankruptcy laws; the law prior to October 17, 2005 (the effective date of many of the provisions of BAPCPA) allowed dismissal only for "substantial abuse."

1



RECEIVED

MAY − 1 2006

Chambers of
Pamela Pepper

Technologies.

On the date they filed their petition, the debtors filed all of their schedules and their certificate of credit counseling (required by § 109(h) of BAPCPA[2]). They did not, however, file Form B22A. Form B22A is the official bankruptcy form debtors must complete to go through the intricate calculations necessary to determine whether, based on their "current monthly income" ("CMI"),[3] they are presumed to be abusing the bankruptcy laws. Because the Kinnee's matter is a Chapter 7 proceeding, and because the clerk's office has come to expect a debtor to file a Form B22A as a matter of course in a Chapter 7 proceeding, the clerk's office sent a notice to the debtors on April 4, 2006, notifying them that their filing was deficient because it did not include the Form B22A.

On April 11, 2006, counsel for the debtors sent a letter to the clerk of court. In that letter, counsel stated, "I am unable to find the statutory authority which

---

[2] Interestingly, § 109(h) holds that "an individual" may not be a debtor under the bankruptcy laws unless "such individual" has obtained the required credit counseling in the manner the statute prescribes. This provision makes no distinction between a debtor who has primarily consumer debts and one who has primarily business debts. One might imagine that different types of counseling might be needed for those different types of debtors, or that Congress might have opined that business debtors didn't need credit counseling (as it apparently has opined that business debtors needn't be subject to dismissal for abuse of the bankruptcy laws). That is not the case, however; § 109(h) appears to apply to any individual who seeks the protections afforded a debtor under the bankruptcy laws.

[3] Pundits have joked that the "current monthly income" referred to in § 707(b)(2)(A)(i) is *not* "current," *not* "monthly," and *not* "income." Rather, the "current monthly income," or "CMI" for short, is "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending [on specified dates prior to the filing of the petition]." 11 U.S.C. §101(10A).

2

requires the filing of a Form B22A in a Chapter 7 case of a debtor with primarily business debt." The next day–probably before the panel trustee had received a copy of counsel's letter to the clerk–the panel trustee filed an emergency motion to extend the time within which to file the Form B22A, asking for an expedited hearing.

In his motion, the panel trustee indicated that, pursuant to the deficiency notice, the deadline set for the filing of the Form B22A was April 17, 2006. The trustee expressed his belief that the debtors had assets; he appeared to be concerned that the matter might be dismissed for failure to file the Form B22A before he had a chance to determine whether such assets existed and what their value to creditors might be. Thus, the trustee asked the Court to extend the deadline for the debtor to file the Form B22A for thirty (30) days.

The Court held a hearing on the matter on April 17, 2006. Counsel for the debtor, the Chapter 7 panel trustee and the U.S. Trustee were present. Debtors' counsel provided a brief, and orally argued some of the points in that brief. The Chapter 7 panel trustee and the U.S. Trustee each indicated that they agreed with the debtors' position. The Court agrees, as well, and said so from the bench. This decision explains why the Court reached this conclusion.

3

Discussion

A.  *Section 707(b) Dismissal Is Reserved for Debtors With "Primarily Consumer Debts."*

BAPCPA has wrought many confusions among those who practice bankruptcy law. One of those confusions regards what documents or information must be filed by a debtor, and what the consequences of failing to file those items are. Consideration of the issue raised in this case requires an attempt to sort through some of that confusion.

As the debtors pointed out in their brief, § 521 of BAPCPA provides a laundry list of items which must be filed. Section 521(a) requires a debtor to file a number of things—a list of creditors (sometimes called a "matrix" or a "master list"), schedules, copies of pay stubs or similar pay information, a statement of monthly net income, and a statement disclosing any reasonably anticipated increase in income or expenditures over the twelve months following the date the petition is filed. If these particular items are not filed within 45 days after the date the petition is filed (or if the debtor doesn't seek an extension of time within that 45 days), the matter "shall be automatically dismissed effective on the 46th day after the date of the filing of the petition." 11 U.S.C. § 521(i).

On the § 521(a) list of items which must be filed within 45 days is "a schedule of current income and current expenditures," required by § 521(a)(1)(B)(ii). Subsection (B)(ii) refers to "current income," *not* current monthly income. The debtor can meet the requirement of filing a schedule of current income by filing

4

Schedule I–just like he or she did prior to BAPCPA. Section 707(b)(2)(C), however, requires that the "statement of the debtor's current monthly income, and the calculations that determine whether a presumption [of abuse] arises under subparagraph(A)(i)" "shall" be included as "part of the schedule of current income and expenditures required under section 521." Accordingly, if a debtor is someone whose filings are subject to review for abuse, then he or she is required to file means test calculations.[4]

Interim Federal Rule of Bankruptcy Procedure 1007(b)(4) states that "an individual debtor in a Chapter 7 case with primarily consumer debts shall file a statement of current monthly income prepared as prescribed by the appropriate Official Form . . . ." The Judicial Conference of the United States has promulgated Form B22A as the "official" means test calculation form; therefore, Interim Rule 1007(b)(4) (as well as Fed. R. Bankr. P. 9009, which requires the "observ[ation] and use[ ]" of official forms, "with alterations as may be appropriate") requires the filing of Form B22A. The appendix to the Local Rules for the Eastern District of Wisconsin also requires that a Chapter 7 debtor file a Form B22A. This is likely why both the clerk's office and the panel trustee assumed that these particular Chapter 7 debtors were required to file it.

---

[4] This begs the question–is Form B22A one of those items which subjects a debtor's matter to "automatic" dismissal on the 46th day if it (or the information it must contain) is not filed within 45 days? That may be a question for another day, but is not relevant in this matter because the Court concludes that § 707(b) of BAPCPA does not require the Kinnees to file a Form B22A at all.

The debtor, however, argues convincingly that § 707 itself excludes the Kinnees from the requirement in § 707(b)(2)(C) that they file, as part of their schedule of current income and expenditures, means test calculations. Prior to the enactment of BAPCPA, § 707(b) stated that a court "may dismiss a case filed by an individual debtor *whose debts are primarily consumer debts*." This language did not change with the BAPCPA amendments; § 707(b)(1) continues to apply only to those debtors whose debts are primarily consumer debts. Similarly, Interim Fed. R. Bankr. P. 1007(b)(4) requires the means test calculation on the official form to be filed only by debtors whose debts are primarily consumer debts. Even Form B22A itself states, at the top of the first page, that "this statement must be completed by every individual . . . debtor . . . whose debts are primarily consumer debts."

One court has considered this matter. In In re: Moates, 338 B.R. 716 (Bkrtcy. N.D. Texas, Jan. 27, 2006), Judge Robert Jones concluded that, based on the plain language of § 707(b) and on the United States Trustee's agreement with the plain language, individual debtors who had primarily business debts did not have to file the means test calculations. In an article he wrote for the American Bankruptcy Law Journal, Chief Judge Eugene R. Wedoff of the Northern District of Illinois reached a similar conclusion. *See* Eugene R. Wedoff, Means Testing in the New § 707(b), 79 American Bankruptcy Law Journal 231 (2005). In describing the framework of the new means test requirement, Judge Wedoff noted that "pre-BAPCPA § 707(b) had five . . . features that limited its effect;" the first feature was

6

the fact that "it applied only to individual debtors 'whose debts are primarily consumer debts,' thus making it inapplicable to wealthy individuals with business or investment obligations in excess of their consumer debts." Id. at 233. Judge Wedoff went on to note that BAPCPA did not address this limitation; "§ 707(b) still applies only to individuals with primarily consumer debts . . . ." Id. at 234.

The plain language of the statute, the intent expressed in the interim rule and the form itself, the decision of the one court to have considered this matter, and the scholarly article by Judge Wedoff, all make clear that individual debtors whose debts are *not* primarily consumer debts are not required to file means test calculations–in other words, they're not required to file Form B22A.

In an effort to address all possible arguments to the contrary, debtors' counsel points out that § 707(b)(2)(C) requires "the debtor" to include a statement of the CMI and the means test calculations as part of Schedules I and J. Unlike other provisions of the statute, which are careful to distinguish between the requirements made of "individual debtors" and those made of "debtors" (i.e., all debtors), § 707(b)(2)(C) refers only to debtors. Because the main subpart of the statute under which § 707(b)(2)(C) falls–§ 707(b)–clearly limits its application to "individual" debtors whose debts are "primarily consumer debts," subsection (2)(C) should be interpreted within that context. The canon of statutory construction known as "noscitur a sociis" tells us to determine the meaning of doubtful words in a statute by looking at the meaning of other words around the doubtful words. It seems clear

Case 06-21356-pp    Doc 18    Filed 05/01/06    Page 8 of 15

that, for whatever reason, Congress intended the provisions of § 707(b) to apply only to individual debtors whose debts were primarily consumer debts. Thus, it would make little sense for Congress to insert into § 707(b)(2)(C) a provision that would somehow make it applicable to all debtors.

It is, therefore, the Court's conclusion that individual Chapter 7 debtors whose debts are *not* primarily consumer debts are not subject to dismissal for abuse of the bankruptcy laws, and thus are not required to file Form B22A. One may wonder why Congress chose to exclude people with primarily business debts from review for abuse. As Chief Judge Wedoff intimates in his article, this decision means that courts cannot dismiss for abuse under § 707(b) individuals, regardless of how well-heeled, who have business or investment debts which exceed their consumer debts. Did Congress not think such an individual capable of abusing the bankruptcy laws? Any answer to that question would be speculation. But the fact remains–§ 707(b) dismissal, and the need to file a means test form, remains a burden placed only on those individual debtors whose debt is primarily consumer debt.

B. *The Kinnee's Debt Is Primarily Business Debt.*

The above conclusion leaves only the determination of whether the Kinnee's debts are "primarily consumer debts." Counsel for the debtors asserts that their debts are primarily business debts, and neither the Chapter 7 panel trustee nor the U.S. Trustee disputes that assertion.

8

The bankruptcy code defines "consumer debt." Section 101(8) states that "consumer debt" is "debt incurred by an individual primarily for a personal, family, or household purpose." Some courts have distinguished a "consumer" debt from a "non-consumer" debt by referring to a non-consumer debt as a debt with a "profit motive." *See, e.g.,* In re: Stewart, 175 F.3d 796, 806 (10th Cir. 1999) (citations omitted); In re: Booth, 858 F.2d 1051, 1054-55 (5th Cir. 1988).

In the Kinnee's case, they list $198,854.00 of secured debt, and $1,800,892.00 of unsecured debt, for a total indebtedness of $1,999,746.00. Of their unsecured debt, $1,282,938.00 represents a personal guaranty for Custom Machine Technologies, and $500,000 represents a personal guaranty for Superior Stainless and Erecting. It seems clear to the Court that these two debts, which total $1,782,938–are business debts. They are debts incurred, not for personal, family or household purposes, but for the purpose of running those businesses. In contrast, the remainder of the total debt–$216,808–appears to the Court to be consumer debt. This debt includes medical expenses, credit card bills, banking fees, etc.

In total, the Kinnees have some 57 creditors. Fifty-five of those appear to be creditors holding consumer debts. Two of those appear to be creditors holding business debts–the two personal guaranties of the two businesses Mr. Kinnee ran. So, while the Court determines that more than half of the Kinnee's debt is business debt, far fewer than half of the creditors are owed business debts.

The question, then, is whether the Kinnee's debts are "primarily" consumer

9

debts or "primarily" business debts. Courts are divided over the test to apply to determine whether debts are "primarily" consumer debts. One school of thought holds that when more than half of the dollar amount of the total debt owed is consumer debt, then the debt is "primarily" consumer debt. *See* Kelly v. Zolg (In re: Kelly), 841 F.2d 908, 913 (9th Cir. 1987); In re: Stewart, 175 F.3d 796, 808 (10th Cir. 1999). The other school of thought holds that debts cannot be classified as "primarily" consumer debts unless more than 50% of the total indebtedness is consumer debt *and* the relative number of consumer debts is higher than that of non-consumer debts. *See, e.g.*, In re: Booth, 858 F.2d 1051, 1055 (5th Cir. 1988); In re: Johnson, 115 B.R. 159, 162 (Bkrtcy. S.D. Ill. 1990) (citing Booth); In re: Nolan, 140 B.R. 797, 801 (Bkrtcy. D. Colo. 1992) (citing Booth).

This Court finds the first school of thought the more persuasive one. As the Ninth Circuit noted in Kelly, "'Primarily' means 'for the most part.' Thus, when 'the most part'—i.e., more than half—of the dollar amount owed is consumer debt, the statutory threshold is passed." Id., quoting Webster's Ninth New Collegiate Dictionary 934 (1984). This comports with the common-sense meaning of the word "primarily;" many speakers use the word "primarily" to mean "mostly." While it can be dangerous to make assumptions about what Congress meant when it used one particular word rather than another, one can imagine that had Congress wanted the "primarily" test to be based on the number, and not the amount, of the debts owed, it might have made § 707(b) applicable to "individual debtors for whom the

10

number of consumer debts exceeds the number of non-consumer debts," or some such language.

If the "primarily" test required *both* the number of consumer debts to exceed the number of business debts *and* the percentage of consumer debts to exceed the percentage of business debts seems to lead to possible absurd conclusions. A debtor with one consumer debt of $300,000 and twenty business debts totaling $20,000 would end up being classified as a debtor who did *not* have primarily consumer debt. In the current case, the Kinnee's, who have two business creditors to whom they owe $1.7 million dollars and 55 consumer creditors to whom they owe less than $250,000, would be considered to have primarily consumer debt. These results fly in the face of the average person's understanding of what "primarily" means.

In contrast, the main decision supporting the view that both percentage and number of debts go into the "primarily" calculation is In re: Booth, 858 F.2d 1051, 1055 (5th Cir. 1988). A disconcerting feature of the Fifth Circuit's decision in Booth is that the court seems to adopt the "number-of-debts" test from In re Restea, 76 B.R. 728, 735 (Bkrtcy. D.S.D. 1987). In fact, the Booth court specifically states,

> It has been noted, we believe correctly, that "primarily" suggests an overall ratio of consumer to nonconsumer debts of over fifty percent. Furthermore, the consumer debts should be evaluated not only by amount, but by the relative number. *In re Restea*, 76 B.R. 728, 735 (Bkrtcy. D.S.D. 1987).

Id. This is the sum and substance of the Booth court's rationale for requiring the number of consumer debts to exceed the number of non-consumer debts, and it

11

clearly implies that the Restea case says as much.

When one looks to the Restea decision, however, one does not find such a clear statement. The South Dakota court first stated,

> What constitutes "primarily" for Section 707(b) purposes defies precise definition. It is not defined in the Code. *Collier* states, "The term 'primarily' indicates that all the debts need not be consumer debts, but that consumer debts must be a substantial component of the indebtedness." 4 *Collier on Bankruptcy* ¶ 707.07, at 707-17 (15th ed. 1987). Webster defines primarily as "principal" or "fundamental."

In re: Restea, 76 B.R. 728, 734 (Bankr. D. S.D. 1987). This passage sheds little light on whether the South Dakota court was referring to the number of debts or the amount.

The court then analyzed the particulars of the Restea debts as follows:

> Trustee insists that there are clearly "primarily consumer debts" in the instant case because minimally 69 percent of the *unsecured* (A-3) scheduled debts are consumer debts. The Court does not agree with this assessment because [three of the debts] are not consumer, but business debts totaling $57,313.67. Consumer unsecured debt totals $47,327.48 and, thus, is approximately 45 percent of the unsecured debt. The remaining applicable consumer "secured" debt is $19,132.78 (debts secured by real property are not included). Overall, therefore, consumer debt is approximately 53 percent of all applicable debt in this case.

Id. The Restea court concluded that 53% was not sufficient for it to conclude that the "principal" debt was consumer debt. Id.

This Court is unclear on how the above reasoning leads to a conclusion that the Restea court required that the *number* of consumer debts exceed the *number* of non-consumer debts. Rather, the Restea language appears to indicate that it is the

12

percentage of the total amount of the consumer debt, and not the number of consumer debts, that determines whether § 707(b) applies. True, the Restea court found that 53%–an amount clearly over 50%–was not enough to make the debts "primarily" consumer debts. But nowhere in the decision does the Restea court state that it is relying instead, or in addition, on the *number* of consumer debts compared to the number of business debts. Because the case upon which the Fifth Circuit based its decision in Booth does not seem to support the Booth conclusion, the Booth reasoning is not persuasive to this Court.[5]

It is the Court's conclusion, then, that when more than 50% of a debtor's total indebtedness is non-consumer debt, that debtor is not subject to § 707(b) dismissal because he or she does not have "primarily" consumer debts. In the Kinnee's case, some 89% of their total debt is business debt, comprised of the two personal guaranties on the two businesses. Accordingly, their debt is *not*–as the parties agree–primarily consumer debt, and they are not subject to § 707(b) abuse review. Thus, they are not required to file a Form B22A.

For that reason, the panel trustee's motion to extend the time for filing the Form B22A is unnecessary. At the hearing, the panel trustee–agreeing with the debtors' arguments–requested permission to withdraw his motion. The Court orally

---

[5] Oddly, both the Southern District of Illinois decision in Johnson and the District of Colorado decision in Nolan specifically indicate that those courts found Booth "better reasoned" than those cases which looked only to percentage of total debt. Yet the only "reasoning" used in Booth is a reference to Restea–which does not appear to support the conclusion in Booth.

13

granted that request, and affirms that permission here.

WHEREFORE, the Court hereby ORDERS that the debtors are not required to file Form B22A, because they are not individual debtors whose debts are primarily business debts. The Court further ORDERS that the trustee may withdraw the April 12, 2006 Emergency Motion to Extend Time to File a Statement of Current Monthly Income and Means Test Calculations Form 22A and Shorten Time for Hearing So That It May Be Heard Before April 17, 2006.

SO ORDERED THIS 1st day of May, 2006.

HON. PAMELA PEPPER
United States Bankruptcy Court

Cc:   James W. Kinnee
       Brenda L. Kinnee
       Debtors

       John M. Gallo
       Counsel for the Debtors

       Douglas F. Mann
       Chapter 7 Panel Trustee

       Office of the U.S. Trustee

14